Rex's Estate

*Aaron S. Swartz, Jr.,* and *John E. Flynn* of *High, Dettra & Swartz,* for appellant.

*Paul P. Wisler,* for Commonwealth.

HOLLAND, P. J., December 4, 1942.—The appeal from the appraisement of decedent's estate for Pennsylvania transfer inheritance tax was filed because a deduction was disallowed.

The facts have been stipulated by counsel, and are as follows: Decedent died on November 18, 1941. Letters of administration c. t. a. were granted to his wife,

Clara E. B. Rex. She is also the sole residuary legatee under his will and the appellant here.

On February 5, 1941, decedent and his wife executed and delivered to Montgomery National Bank, of Norristown, their joint and several collateral note, for $10,000, payable on demand. There were delivered to the bank, at the time, 100 shares of Norristown Water Company and 400 shares of Pennsylvania Railroad Company stock, as collateral security. These shares of stock were then owned by decedent and his wife as tenants by entireties, and the certificates were thus issued. At decedent's death the entire principal of the note remained unpaid, and accrued interest amounted to $28.33.

Decedent's gross estate was appraised for inheritance tax purposes at $19,676.09. This did not include the above-mentioned shares of stock, the ownership thereof by entireties being recognized as excluding them for that purpose.

Deductions aggregating $12,025.90 were claimed. These did include the principal and interest due on the above-mentioned note. However, this was not allowed, and tax is claimed by the register in the amount of $353. Appellant contends the amount of tax due is $153, which would be the amount if the questioned deductions are allowable in full.

The register of wills of this county, who passes upon the debts and deductions claimed, takes the following view, where a debt is secured as collateral. In such cases, he looks at the collateral only. If the collateral was owned by decedent, alone, and is included in the gross assets appraised for inheritance tax, the debt is allowed as a deduction. But if, for any reason, the collateral was not thus included among the gross assets, the debt secured thereby is not allowed as a deduction.

There is no justification whatever for any such test in determining the allowability of a debt as a deduc-

tion. The Act of June 20, 1919, P. L. 521, art I, sec. 2, as last amended by the Act of June 24, 1939, P. L. 721, sec. 1, 72 PS §2302, provides that the clear value of a decedent's estate subject to inheritance tax shall be ascertained by taking the gross value, and then by deducting therefrom, inter alia, "the *debts* of the decedent" (italics supplied). The Inheritance Tax Act nowhere, by express words or implication, makes any distinction between secured and unsecured debts. To break down secured debts into sub-classifications, depending upon the nature and ownership of the collateral security, is to take still another step further away from the statute. The one and only way to find the correct answer is by looking at the alleged debt and by determining whether or not it actually is a *debt* of the decedent. Inquiry into the collateral security is wholly immaterial.

There have been several cases before this court arising from this view of the register toward secured debts in general. However, the debt was in each case that of the decedent alone. No question of joint, several, or joint and several obligations was present. The only question was of the significance, if any, of the fact that the collateral security for the debt, in whole or in part, was not included in the appraisement of decedent's gross estate. Because the ownership of the collateral security is without significance, the debt in each of those cases was held deductible in full.

This same question was before the Orphans' Court of Fayette County, in Jeffrey's Estate, 34 D. & C. 186 (1938). There husband and wife owned real estate by entireties. They executed their joint and several bond and mortgage secured thereon. After the husband's death, the balance due on the mortgage was claimed as a deduction for inheritance tax purposes. It was disallowed as a debt and this action was sustained by the court. The method of approach was as stated above

to be the proper one, by inquiry into whether or not the mortgage was a debt of the husband. The court held it was not, because the equitable doctrines of subrogation and marshalling assets are applicable. These would compel the mortgagee to go against the real estate security first, and would deny him recovery against the husband's separate estate on the bond until the security had been exhausted. In the absence of evidence that the real estate was not sufficient to discharge the mortgage debt in full, it was presumed to be sufficient.

In Miller Lumber & Coal Co. v. Berkheimer, Admx., et al., 342 Pa. 329 (1941), the principle relied on in Jeffrey's Estate, supra, for the conclusion was also in question. There, husband and wife owned real estate by entireties, and the husband also owned other real estate, alone. A joint mortgage of husband and wife was a first lien on both the "entireties" real estate and the husband's separate real estate. Another creditor, of the husband only, had a junior lien on the husband's separate real estate. After the husband's death, the joint creditor took proceedings to enforce his debt against the husband's separate real estate. As that would exhaust the separate real estate and leave nothing for the husband's separate creditor, he brought a bill in equity to compel the joint creditor to proceed against the joint property. The Supreme Court held that the doctrine of marshalling assets, which was relied upon, was inapplicable. That doctrine affords relief only "where both funds are in the hands of a common debtor of both creditors or unless the fund not taken is one which in equity is primarily liable" (p. 331).

That case is not an inheritance tax deduction case. Yet it removes the doctrine of marshalling of assets from application to prevent a joint creditor of husband and wife, secured by a lien on entireties property, from

proceeding against the husband's separate estate first. Jeffrey's Estate was not discussed or cited, but with the foundation on which it rests thus removed it must fall.

Does it follow, without more, in the case now before us, that the obligee of the note could recover the full principal and interest due, from the decedent husband's estate alone? In the Miller Lumber & Coal Co. case, supra, at page 331, the opinion goes on to state that: "Each debt was in fact the debt of the husband alone and the wife has a right to insist that the husband's land be sold first in satisfaction of what was in reality his debt. She has the rights of a surety . . ."

The report of the opinion by the court below shows clearly that the wife in that case received none of the proceeds of the joint mortgage with her husband: Miller Lumber & Coal Co. v. Berkheimer, 54 York 141, 142 (1940). Here, there is no evidence whether the proceeds of the loan went to the decedent, his wife, or both.

In the absence of such evidence it must be presumed that the proceeds went to both, equally: McGlinn's Estate, 55 Montg. 5 (1938). We held there that a wife who paid in full certain joint obligations of her husband and herself was entitled to recover one half from the deceased husband's estate, under the equitable doctrine of contribution. Being equally liable with her husband, she had no right to insist that his property be taken first to satisfy the debt. She was not a surety but a joint obligor. The same reasoning applies here. If the joint debt were paid entirely out of the decedent's estate, there would arise, immediately, the equitable right to obtain contribution to the extent of one half or $5,014.16, from the wife. That right is worth par value. The collateral security for the loan had a market value of $18,600 at decedent's death, and decedent's widow now owns that, alone. Furthermore, her distributive share as decedent's sole residuary

legatee will exceed $7,000 even according to appellant's computation.

Without doubt the liability of decedent and his wife as co-makers of the note was joint and several. Under Pa. R. C. P. 2229(*b*) the obligee of such an obligation is permitted, but not required, to join the obligors as defendants. In that respect the Rules of Civil Procedure did not change the common law as to actions ex contractu: Goodrich-Amram Annotations §2229(*b*)-1. The purpose of permitting but not requiring joinder of such obligors must be to give the obligee full advantage of the fact that the obligation is both joint and several. The matter of contribution is left for the obligors to work out between themselves. If one is compelled to pay the whole debt at common law he must bring a separate action thereafter to enforce contribution. Pa. R. C. P. 2252(*a*) gave relief from this delay and multiplicity of suits by permitting one obligor-defendant to join as an additional defendant another who is jointly or severally liable with him. Of course, these rules do not apply in the orphans' court, and are mentioned only to show the modern trend of the law.

If a claim on the note were made at the audit of the account, would it be allowed against the estate in full? Here, with the co-obligor also the sole residuary legatee, the problem is over-simplified, because in effect any award to the obligee could come only out of the residuary legatee's pocket. So let us assume that the co-obligor is the legatee of a pecuniary legacy of $6,000, and the residuary legatee is a different person. The question then would be whether to allow the entire claim against the estate, which would diminish the residuary legatee's share pro tanto, and compel him to enforce contribution by the co-obligor in a separate and subsequent action; or whether to take the short cut and allow the claim one half against the estate and one half against the co-obligor's legacy. Contribution between the joint

obligors would thus be enforced at the same time that the claim is allowed the obligee. It would seem that, as it is so often said the orphans' court is a court of equity, it should aid in avoiding circuity of action and delay by accomplishing the proper ultimate result in one proceeding, if at all possible. No obstacles to so doing appear. The court has before it the entire fund and both obligors. In this sense, the debt is a debt of the decedent as to one half the principal and interest, and the debt of the co-obligor as to the other one half.

Even if this short cut is rejected, and the claim is allowed in its entirety against the estate in the first instance, there will be no substantial difference. Upon allowance of the claim, a deduction of $10,028.33 is substantiated. But, there will immediately spring into being a new asset of the estate, namely, the right of contribution against the co-obligor to the extent of $5,014.16. If the deduction of the full amount is allowed, this new asset will have to be appraised as part of the gross estate. Since the co-obligor's interest exceeds the amount he must contribute, the asset must be appraised at full face value, and will offset the deduction as to one half: the net result of this more circuitous method is the same as that reached above.

Where a debt is the joint and several obligation of decedent and another, so that under the equitable doctrine of contribution each should pay one half, and where the co-obligor has an interest in decedent's estate equal or greater in value than the amount of the contribution due by him, the debt is a deduction to determine the clear value of decedent's estate subject to transfer inheritance tax to the extent of one half the principal and interest due thereon.

And now, December 4, 1942, this appeal is sustained in part and is dismissed in part and one half the principal and interest due as of decedent's death on the note in question, to wit, the sum of $5,014.17 is allowed

as a deduction from the gross appraised value of decedent's estate in determining the clear value thereof subject to Pennsylvania transfer inheritance tax.